NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, CA 90012
     Telephone: (213) 894-6077
     E-mail: Ruth.Pinkel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18- |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT THOMAS M. SHEPOS |
| v. | |
| THOMAS M. SHEPOS, | |
| Defendant. | |

18 CR 00569 RGK

1.   This constitutes the plea agreement between THOMAS M. SHEPOS ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of the above-described matter.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

### DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

     a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form

1   attached to this agreement as Exhibit A or a substantially similar
2   form, which charges defendant with False Statement to Government
3   Agent in violation of 18 U.S.C. § 1001(a)(2) and Subscribing to False
4   Tax Return in violation of 26 U.S.C. § 7206(1).

5          b.   Not contest facts agreed to in this agreement.

6          c.   Abide by all agreements regarding sentencing contained
7   in this agreement.

8          d.   Appear for all court appearances, surrender as ordered
9   for service of sentence, obey all conditions of any bond, and obey
10  any other ongoing court order in this matter.

11         e.   Not commit any crime; however, offenses that would be
12  excluded for sentencing purposes under United States Sentencing
13  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
14  within the scope of this agreement.

15         f.   Be truthful at all times with Pretrial Services, the
16  United States Probation Office, and the Court.

17         g.   Pay the applicable special assessments at or before
18  the time of sentencing unless defendant lacks the ability to pay and
19  prior to sentencing submits a completed financial statement on a form
20  to be provided by the USAO.

21         h.   Not seek the discharge of any restitution obligation,
22  in whole or in part, in any present or future bankruptcy proceeding.

23                       PAYMENT OF TAXES OWED

24     3.   Defendant admits that defendant received unreported income
25  of $434,400 for 2010 to 2016, which consists of the following amounts
26  for the following years: $25,000 (2010); $12,000 (2011); $12,000
27  (2012); $52,000 (2013); $139,400 (2014); and $102,000 (2015); and
28  $92,000 (2016).  Defendant agrees to cooperate with the Internal

                                  2

1  Revenue Service in the determination of defendant's tax liability for
2  2010 to 2016. Defendant agrees that:

3        a.  Defendant will file, prior to the time of sentencing,
4  amended returns for the year subject to the above admissions,
5  correctly reporting unreported income; will, if requested to do so by
6  the Internal Revenue Service, provide the Internal Revenue Service
7  with information regarding the years covered by the returns; will pay
8  at or before sentencing all additional taxes and all penalties and
9  interest assessed by the Internal Revenue Service on the basis of the
10 returns; and will promptly pay all additional taxes and all penalties
11 and interest thereafter determined by the Internal Revenue Service to
12 be owing as a result of any computational error(s).

13       b.  Nothing in this agreement forecloses or limits the
14 ability of the Internal Revenue Service to examine and make
15 adjustments to defendant's returns after they are filed.

16       c.  Defendant will not, after filing the returns, file any
17 claim for refund of taxes, penalties, or interest for amounts
18 attributable to the returns filed in connection with this plea
19 agreement.

20       d.  Defendant is liable for the fraud penalty imposed by
21 the Internal Revenue Code, 26 U.S.C. § 6663, on the understatement of
22 tax liability for 2010-2016.

23       e.  Defendant gives up any and all objections that could
24 be asserted to the Examination Division of the Internal Revenue
25 Service receiving materials or information obtained during the
26 criminal investigation of this matter, including materials and
27 information obtained through grand jury subpoenas.

28

1          f.    Defendant will sign closing agreements with the

2  Internal Revenue Service contemporaneously with the signing of this

3  plea agreement, permitting the Internal Revenue Service to assess and

4  collect the total sum of $110,021 (consisting of the following

5  amounts for the following tax years: $3,941 (2010); $1,625 (2011);

6  $3,325 (2012); $14,216 (2013); $38,972 (2014); $26,019 (2015); and

7  $21,923 (2016)), which comprises the tax liabilities, as well as

8  assess and collect the civil fraud penalty for each year and

9  statutory interest, on the tax liability as provided by law.

10    4.    Defendant further agrees to cooperate fully with the USAO,

11  the Federal Bureau of Investigation, Internal Revenue Service, and,

12  as directed by the USAO, any other federal, state, local, or foreign

13  prosecuting, enforcement, administrative, or regulatory authority.

14  This cooperation requires defendant to:

15          a.    Respond truthfully and completely to all questions

16  that may be put to defendant, whether in interviews, before a grand

17  jury, or at any trial or other court proceeding.

18          b.    Attend all meetings, grand jury sessions, trials or

19  other proceedings at which defendant's presence is requested by the

20  USAO or compelled by subpoena or court order.

21          c.    Produce voluntarily all documents, records, or other

22  tangible evidence relating to matters about which the USAO, or its

23  designee, inquires.

24    5.    For purposes of this agreement: (1) "Cooperation

25  Information" shall mean any statements made, or documents, records,

26  tangible evidence, or other information provided, by defendant

27  pursuant to defendant's cooperation under this agreement or pursuant

28  to the letter agreement previously entered into by the parties dated

1  December 16, 2016 (the "Letter Agreement"); and (2) "Plea
2  Information" shall mean any statements made by defendant, under oath,
3  at the guilty plea hearing and the agreed to factual basis statement
4  in this agreement.

### THE USAO'S OBLIGATIONS

6      6.   The USAO agrees to:

7         a.   Not contest facts agreed to in this agreement.

8         b.   Abide by all agreements regarding sentencing contained
9  in this agreement.

10         c.   At the time of sentencing, provided that defendant
11  demonstrates an acceptance of responsibility for the offenses up to
12  and including the time of sentencing, recommend a two-level reduction
13  in the applicable Sentencing Guidelines offense level, pursuant to
14  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
15  additional one-level reduction if available under that section.

16         d.   With respect to Counts One and Two, recommend that
17  defendant be sentenced to a term of imprisonment no higher than the
18  low end of the applicable Sentencing Guidelines range.

19      7.   The USAO further agrees:

20         a.   Not to offer as evidence in its case-in-chief in the
21  above-captioned case or any other criminal prosecution that may be
22  brought against defendant by the USAO, or in connection with any
23  sentencing proceeding in any criminal case that may be brought
24  against defendant by the USAO, any Cooperation Information.
25  Defendant agrees, however, that the USAO may use both Cooperation
26  Information and Plea Information: (1) to obtain and pursue leads to
27  other evidence, which evidence may be used for any purpose, including
28  any criminal prosecution of defendant; (2) to cross-examine defendant

1   should defendant testify, or to rebut any evidence offered, or
2   argument or representation made, by defendant, defendant's counsel,
3   or a witness called by defendant in any trial, sentencing hearing, or
4   other court proceeding; and (3) in any criminal prosecution of
5   defendant for false statement, obstruction of justice, or perjury.

6          b.   Not to use Cooperation Information against defendant
7   at sentencing for the purpose of determining the applicable guideline
8   range, including the appropriateness of an upward departure, or the
9   sentence to be imposed, and to recommend to the Court that
10  Cooperation Information not be used in determining the applicable
11  guideline range or the sentence to be imposed.  Defendant
12  understands, however, that Cooperation Information will be disclosed
13  to the probation office and the Court, and that the Court may use
14  Cooperation Information for the purposes set forth in U.S.S.G
15  § 1B1.8(b) and for determining the sentence to be imposed.

16         c.   In connection with defendant's sentencing, to bring to
17  the Court's attention the nature and extent of defendant's
18  cooperation.

19         d.   If the USAO determines, in its exclusive judgment,
20  that defendant has both complied with defendant's obligations under
21  paragraphs 2 and 3 above and provided substantial assistance to law
22  enforcement in the prosecution or investigation of another
23  ("substantial assistance"), to move the Court pursuant to U.S.S.G. §
24  5K1.1 to fix an offense level and corresponding guideline range below
25  that otherwise dictated by the sentencing guidelines, and to
26  recommend a term of imprisonment within this reduced range.

27         DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

28      8.   Defendant understands the following:

6

1        a.     Any knowingly false or misleading statement by
2 defendant will subject defendant to prosecution for false statement,
3 obstruction of justice, and perjury and will constitute a breach by
4 defendant of this agreement.

5        b.     Nothing in this agreement requires the USAO or any
6 other prosecuting, enforcement, administrative, or regulatory
7 authority to accept any cooperation or assistance that defendant may
8 offer, or to use it in any particular way.

9        c.     Defendant cannot withdraw defendant's guilty pleas if
10 the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a
11 reduced guideline range or if the USAO makes such a motion and the
12 Court does not grant it or if the Court grants such a USAO motion but
13 elects to sentence above the reduced range.

14        d.     At this time the USAO makes no agreement or
15 representation as to whether any cooperation that defendant has
16 provided or intends to provide constitutes or will constitute
17 substantial assistance. The decision whether defendant has provided
18 substantial assistance will rest solely within the exclusive judgment
19 of the USAO.

20        e.     The USAO's determination whether defendant has
21 provided substantial assistance will not depend in any way on whether
22 the government prevails at any trial or court hearing in which
23 defendant testifies or in which the government otherwise presents
24 information resulting from defendant's cooperation. That is, whether
25 any other co-conspirator is found guilty or not guilty will have no
26 impact on what benefit, if any, defendant receives from the USAO.
27 The USAO's determination will depend only on whether defendant
28 provides truthful testimony.

NATURE OF THE OFFENSES

9.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, False Statement to Government Agent, in violation of Title 18, United States Code, Section 1001(a)(2), the following must be true: (a) first, defendant made a false statement in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"); (b) second, defendant acted willfully; that is, defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and (c) third, the statement was material to the activities or decisions of the FBI; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

10.   Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, Subscribing to False Tax Return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant signed and filed a tax return for the year 2014 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, defendant acted willfully.  A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.  A defendant acts willfully when defendant knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

1                          PENALTIES AND RESTITUTION

2          11.   Defendant understands that the statutory maximum sentence

3    that the Court can impose for a violation of Title 18, United States

4    Code, Section 1001, is: 5 years imprisonment; a 3 year period of

5    supervised release; a fine of $250,000 or twice the gross gain or

6    gross loss resulting from the offense, whichever is greatest; and a

7    mandatory special assessment of $100.

8          12.   Defendant understands that the statutory maximum sentence

9    that the Court can impose for a violation of Title 26, United States

10   Code, Section 7206(1), is: 3 years imprisonment; a 1 year period of

11   supervised release; a fine of $250,000 or twice the gross gain or

12   gross loss resulting from the offense, whichever is greatest; and a

13   mandatory special assessment of $100.

14         13.   Defendant understands, therefore, that the total maximum

15   sentence for all offenses to which defendant is pleading guilty is:

16   8 years imprisonment; a 3 year period of supervised release; a fine

17   of $500,000; and a mandatory special assessment of $200.

18         14.   Defendant understands and agrees that the Court: (a) may

19   order defendant to pay restitution in the form of any additional

20   taxes, interest, and penalties that defendant owes to the United

21   States based upon the count of conviction and any relevant conduct,

22   and; and (b) must order defendant to pay the costs of prosecution,

23   which may be in addition to the statutory maximum fine stated above.

24         15.   Defendant understands that, by pleading guilty, defendant

25   may be giving up valuable government benefits and valuable civic

26   rights, such as the right to vote, the right to possess a firearm,

27   the right to hold office, and the right to serve on a jury.

28   Defendant understands that once the court accepts defendant's guilty

1    pleas, it will be a federal felony for defendant to possess a firearm

2    or ammunition.   Defendant understands that the convictions in this

3    case may also subject defendant to various other collateral

4    consequences, including but not limited to revocation of probation,

5    parole, or supervised release in another case and suspension or

6    revocation of a professional license.   Defendant understands that

7    unanticipated collateral consequences will not serve as grounds to

8    withdraw defendant's guilty pleas.

9        16.   Defendant understands that, if defendant is not a United

10   States citizen, the felony convictions in this case may subject

11   defendant to: removal, also known as deportation, which may, under

12   some circumstances, be mandatory; denial of citizenship; and denial

13   of admission to the United States in the future.   The court cannot,

14   and defendant's attorney also may not be able to, advise defendant

15   fully regarding the immigration consequences of the felony

16   convictions in this case.   Defendant understands that unexpected

17   immigration consequences will not serve as grounds to withdraw

18   defendant's guilty pleas.

19       17.   Defendant understands that supervised release is a period

20   of time following imprisonment during which defendant will be subject

21   to various restrictions and requirements.   Defendant understands that

22   if defendant violates one or more of the conditions of any supervised

23   release imposed, defendant may be returned to prison for all or part

24   of the term of supervised release authorized by statute for the

25   offense that resulted in the term of supervised release, which could

26   result in defendant serving a total term of imprisonment greater than

27   the statutory maximum stated above.

28

FACTUAL BASIS

18.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 20 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

**Background**

From approximately 1998 to 2017, defendant was a public official employed by the County of Los Angeles ("County") in the Real Estate Division.  Defendant's duties involved negotiating leases between private building and property owners and various County departments. Defendant was also able to request and receive proposals from private real estate developers who wanted to lease their buildings to County departments.  Once a property was identified for a County department in need of space, defendant was able to negotiate lease terms and draft lease agreements for the County and private property owners, or direct others to do so.  Based on defendant's level of seniority, defendant had significant autonomy to contractually bind the County. In particular, defendant had authority to negotiate contract terms on behalf of the county, although final contract approval lay with the Board of Supervisors, and defendant had authority to approve, with others, change orders on contracts.  Furthermore, in defendant's capacity as a public official employed by the County, defendant owed a fiduciary duty to the citizens of the County and to defendant's

11

1 | employer to perform the duties and responsibilities of defendant's
2 | office free from bias, conflicts of interest, self-enrichment, self-
3 | dealing, concealment, deceit, fraud, kickbacks, and bribery.

4 |     The United States government provides federal assistance to
5 | various County departments, including the Department of Public Social
6 | Services ("DPSS"), every year -- a portion of which is used to cover
7 | some of the County departments' lease expenses.  The aggregate amount
8 | of federal funding received by those County departments exceeds
9 | $10,000 per year.

10 | **The Arman Gabaee Bribery Scheme**

11 |     Arman Gabaee, also known as "Arman Gabay" ("Gabaee"), was a real
12 | estate developer who conducted business with the County. He was the
13 | co-managing partner and co-founder of the Charles Company, a real
14 | estate development firm that developed and maintained commercial and
15 | residential real estate projects.  Gabaee was also a partner of the
16 | California limited partnership M&A Gabaee, among other entities.

17 |     Sometime between 2000 and 2005, Gabaee began to seek improper
18 | assistance from defendant in the course of conducting his (Gabaee's)
19 | real estate business with the County.  During this time, Gabaee had a
20 | lease pending approval before the County Board of Supervisors (the
21 | "Board").  The lease called for DPSS to occupy a portion of the
22 | Hawthorne Mall, which Gabaee owned.  The Board ultimately voted to
23 | approve the lease, but the approval came over a year after it was
24 | initially presented to the Board.  Defendant believed that the delay
25 | on the DPSS Hawthorne Mall lease served as the catalyst for Gabaee
26 | seeking influence and non-public County information about County
27 | leases from defendant.  Gabaee did not compensate defendant for
28 | assistance and non-public County information at this time.

1    In approximately 2010 or 2011, Gabaee began giving cash payments
2  to defendant.  Initially, the amounts were $5,000 per month for
3  approximately five to six months.  After that point, to on or about
4  April 11, 2017, Gabaee gave defendant monthly cash payments of
5  approximately $1,000.  The relationship between defendant and Gabaee
6  changed shortly after defendant began accepting these monthly
7  payments in 2010 or 2011.  Specifically, their relationship
8  transformed to an illegal business relationship, wherein defendant
9  would use his County position to provide assistance to Gabaee and
10  financially benefit Gabaee's businesses in return for Gabaee's
11  monthly payments.
12    The assistance that defendant provided to Gabaee in return for
13  the $1,000 monthly payments included the following: (a) defendant
14  providing non-public County information to Gabaee, including but not
15  limited to, information about the County's leasing needs and
16  competing bids for leases Gabaee desired; (b) defendant giving added
17  attention to, and performing official acts for, Gabaee with regard to
18  Gabaee's existing and potential leases with the County; and (c)
19  defendant resolving issues between Gabaee and various County
20  departments leasing space from Gabaee where issues have arisen within
21  the occupied properties and resolving those issues on terms that were
22  favorable to Gabaee.
23    For instance, on one occasion in 2011, defendant "ran
24  interference" for Gabaee with regard to maintenance issues that had
25  arisen in properties Gabaee was leasing to the County.  The County
26  departments leasing space in the properties owned by Gabaee were
27  upset with maintenance issues, such as broken elevators and roof
28  leaks.  Gabaee relied heavily on defendant to address the issues with

13

1  the departments by improperly deflecting blame away from Gabaee and

2  onto independent contractors, and by allowing Gabaee more time to

3  resolve issues.

4      In addition, prior to defendant's cooperation with the FBI

5  (which began on or about December 16, 2016), Gabaee had offered to

6  buy a property in Northern California for defendant as a bribe.  The

7  value of the properties Gabaee sought to purchase as a bribe for

8  defendant exceeded $1,000,000.  In exchange for the Northern

9  California property bribe, Gabaee sought defendant's assistance

10 securing a County lease for Gabaee, whereby DPSS would lease space in

11 the Hawthorne Mall, which Gabaee owned and was redeveloping.

12     **The Electrical Contractor Bribery Scheme**

13     In addition to bribes from Gabaee, defendant also accepted

14 bribes from an electrical contractor doing business with the County

15 (the "Electrical Contractor").  The Electrical Contractor made

16 payments to defendant in exchange for defendant providing non-public

17 County information to the Electrical Contractor and helping the

18 Electrical Contractor secure County contracts.

19     The illicit nature of their relationship began in approximately

20 August 2013 when the Electrical Contractor offered defendant $25,000

21 to $40,000 for information that would help the Electrical Contractor

22 win a bid to perform electrical work on a property leased by the

23 County.  The Electrical Contractor's work included wiring speakers

24 and installing alarms and security systems.

25     In exchange for the cash payments, defendant would obtain non-

26 public information from the County's Internal Services Department

27 ("ISD") about whether the County had received bids in response to a

28 County Request for Proposal ("RFP").  The RFP process was the means

14

1   by which competing contractors submitted bids to the County to
2   perform work on County properties.  Defendant would then disclose
3   that non-public information to the Electrical Contractor, and/or tell
4   the Electrical Contractor prior winning bids on similar projects, so
5   that the Electrical Contractor could submit a more competitive bid to
6   the County through the RFP process.  Defendant did this to help the
7   Electrical Contractor obtain the County contract.  In other
8   instances, when either there were no other qualifying bids submitted
9   or time constraints precluded a formal RFP, defendant would contact
10  ISD and use the influence of his County position to help the
11  Electrical Contractor obtain the County contract.
12      The Electrical Contractor always paid defendant in cash two to
13  three times per year, usually in an envelope containing $50 or $100
14  bills.  From approximately 2013 through December 2016, the Electrical
15  Contractor gave defendant a total of $250,000 to $300,000 for
16  defendant's assistance with five to seven County contracts ultimately
17  awarded to the Electrical Contractor.  Defendant did not report these
18  bribe payments as income or as anything else.

19      **The Kickback Schemes**
20      On several occasions, defendant arranged to receive improper
21  kickbacks from real estate commissions on properties leased by the
22  County.  Defendant received Form 1099s for theses commissions, which
23  totaled approximately $59,200 for 2012, 2014 and 2016, and reported
24  it as income on his individual tax returns.
25      In another instance, approximately in 2013, defendant arranged
26  with as associate of Gabaee's to receive, and did receive, a real
27  estate commission kickback of $35,000, through a third party, for the
28

1  County's lease of a property on Missouri Avenue in West Los Angeles,

2  but did not pay income taxes on his receipt of these funds.

3  **Other Unreported Income**

4  Defendant gave some of the cash defendant received from the

5  Electrical Contractor to Individual A to store for him (defendant).

6  On one occasion, defendant gave Individual A approximately $150,000

7  to store.  On another occasion, defendant gave Individual A

8  approximately $25,000 to $40,000 to store.  Individual A eventually

9  used the funds to cash checks for the Electrical Contractor and gave

10  defendant $2,500 in interest.  Defendant did not report the $2,500 as

11  income.

12  **False Statements to Federal Agents**

13  On or about November 21, 2016, FBI Special Agents interviewed

14  defendant at the United States Attorney's Office in Los Angeles.

15  Defendant knowingly and willfully made materially false, fictitious,

16  and fraudulent statements and representations to the agents, which

17  included the following: (a) defendant denied that he received

18  anything of value from anyone doing business with the County; and (b)

19  defendant claimed that a $25,000 cashier's check agents questioned

20  him about represented gambling proceeds that defendant had won in

21  prior years, and (c) claimed that unexplained deposits in his bank

22  accounts were gambling proceeds.

23  In truth, as detailed above, defendant did receive money and

24  other things of value from individuals doing business with the

25  County.  Furthermore, the $25,000 cashier's check actually

26  represented bribe proceeds from the Electrical Contractor that

27  Individual A had stored for defendant, and defendant did deposit cash

28  bribe payments from Gabaee and others into his bank accounts.

1    Defendant made the aforementioned false statements to conceal
2    his illegal bribery schemes with Gabaee and others.  Defendant's
3    false statements were material, that is, they had a tendency to
4    influence the FBI's investigation and affected the FBI's ability to
5    properly investigate the illegal activity of defendant and others.
6    **False Statements on Tax Return**
7    On or about April 14, 2015, in Los Angeles County, within the
8    Central District of California, defendant willfully made and
9    subscribed to a materially false United States Individual Income Tax
10   Return, Form 1040, for the calendar year 2014, which defendant
11   verified by a written declaration that it was made under penalty of
12   perjury, and filed such tax return with the Internal Revenue Service,
13   which defendant did not believe to be true and correct as to every
14   material matter in that it failed to report the additional income for
15   2014 described herein.  Specifically, the tax return reported total
16   income of $109,274 and failed to disclose additional income of
17   $139,400.
18   The false information provided by defendant was material in that
19   it affected the IRS's calculation of the amount of income earned and
20   prevented the IRS from verifying the accuracy of the amount of tax
21   claimed to be owed on defendant's return.  Defendant acted willfully.
22   Defendant knew that the law required him to report all income
23   accurately and to pay all income tax that was due and owing.
24   Defendant voluntarily and intentionally violated that duty.
25   **Tax Due and Owing on Unreported Income**
26   For calendar years 2010 to 2016, defendant failed to report a
27   total of $434,400 of income he received from the bribery and/or
28   kickback payments described above, which consists of the following

1  amounts for the following years: $25,000 (2010); $12,000 (2011);
2  $12,000 (2012); $52,000 (2013); $139,400 (2014); and $102,000 (2015);
3  and $92,000 (2016). Defendant's unreported income for 2014 included
4  approximately $102,000 in bribe payments.

5     Defendant's underreporting of income resulted in lowering the
6  taxes reported as due and owing on his Form 1040 individual tax
7  returns. As a result of defendant's conduct, defendant owes
8  additional taxes totaling $110,021 consisting of the following
9  amounts for the following tax years: $3,941 (2010); $1,625 (2011);
10  $3,325 (2012); $14,216 (2013); $38,972 (2014); $26,019 (2015); and
11  $21,923 (2016).

12                              SENTENCING FACTORS

13     19.  Defendant understands that in determining defendant's
14  sentence the Court is required to calculate the applicable Sentencing
15  Guidelines range and to consider that range, possible departures
16  under the Sentencing Guidelines, and the other sentencing factors set
17  forth in 18 U.S.C. § 3553(a). Defendant understands that the
18  Sentencing Guidelines are advisory only, that defendant cannot have
19  any expectation of receiving a sentence within the calculated
20  Sentencing Guidelines range, and that after considering the
21  Sentencing Guidelines and the other § 3553(a) factors, the Court will
22  be free to exercise its discretion to impose any sentence it finds
23  appropriate up to the maximum set by statute for the crime of
24  conviction.

25  //

26  //

27

28

18

20.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count One (False Statements)

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |

Count Two (Subscribing to False Tax Return)

| | | |
|---|---|---|
| Base Offense Level: [$110,021 Tax Loss] | 16 | [U.S.S.G. § 2T1.1(a)(1) and § 2T4.1(F)] |
| Specific Offense Characteristics: [Failure to Report Income Over $10,000 from Criminal Activity] | +2 | [U.S.S.G. §2T1.1(b)(1)] |
| **Multi Count Adjustment:** | +0 | [U.S.S.G. § 3D1.1, 3D1.3, 3D1.4] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

21.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

22.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

23.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

c.   The right to be represented by counsel — and if necessary have the court appoint counsel — at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the court appoint counsel — at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

24.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 33

1   months, defendant gives up the right to appeal all of the following:

2   (a) the procedures and calculations used to determine and impose any

3   portion of the sentence; (b) the term of imprisonment imposed by the

4   Court; (c) the fine imposed by the court, provided it is within the

5   statutory maximum; (d) the amount and terms of any restitution order,

6   provided it requires payment of no more than $110,021; (e) the term

7   of probation or supervised release imposed by the Court, provided it

8   is within the statutory maximum; and (f) any of the following

9   conditions of probation or supervised release imposed by the Court:

10  the conditions set forth in General Orders 318, 01-05, and/or 05-02

11  of this Court; the drug testing conditions mandated by 18 U.S.C.

12  §§ 3563(a)(5) and 3583(d).

13      26.  The USAO agrees that, provided (a) all portions of the

14  sentence are at or below the statutory maximum specified above and

15  (b) the Court imposes a term of imprisonment of no less than 27

16  months, the USAO gives up its right to appeal any portion of the

17  sentence, with the exception that the USAO reserves the right to

18  appeal the following: (a) the amount of restitution ordered if that

19  amount is less than $110,021.

20                  RESULT OF WITHDRAWAL OF GUILTY PLEA

21      27.  Defendant agrees that if, after entering guilty pleas

22  pursuant to this agreement, defendant seeks to withdraw and succeeds

23  in withdrawing defendant's guilty pleas on any basis other than a

24  claim and finding that entry into this plea agreement was

25  involuntary, then (1) the USAO will be relieved of all of its

26  obligations under this agreement; (2) in any investigation, criminal

27  prosecution, or civil, administrative, or regulatory action,

28  defendant agrees that any Cooperation Information and any evidence

21

1  derived from any Cooperation Information shall be admissible against

2  defendant, and defendant will not assert, and hereby waives and gives

3  up, any claim under the United States Constitution, any statute, or

4  any federal rule, that any Cooperation Information or any evidence

5  derived from any Cooperation Information should be suppressed or is

6  inadmissible; and (3) should the USAO choose to pursue any charge

7  that was either dismissed or not filed as a result of this agreement,

8  then (i) any applicable statute of limitations will be tolled between

9  the date of defendant's signing of this agreement and the filing

10 commencing any such action; and (ii) defendant waives and gives up

11 all defenses based on the statute of limitations, any claim of pre-

12 indictment delay, or any speedy trial claim with respect to any such

13 action, except to the extent that such defenses existed as of the

14 date of defendant's signing this agreement.

15                    EFFECTIVE DATE OF AGREEMENT

16      28.  This agreement is effective upon signature and execution of

17 all required certifications by defendant, defendant's counsel, and an

18 Assistant United States Attorney.

19                       BREACH OF AGREEMENT

20      29.  Defendant agrees that if defendant, at any time after the

21 signature of this agreement and execution of all required

22 certifications by defendant, defendant's counsel, and an Assistant

23 United States Attorney, knowingly violates or fails to perform any of

24 defendant's obligations under this agreement ("a breach"), the USAO

25 may declare this agreement breached.  For example, if defendant

26 knowingly, in an interview, before a grand jury, or at trial, falsely

27 accuses another person of criminal conduct or falsely minimizes

28 defendant's own role, or the role of another, in criminal conduct,

1  defendant will have breached this agreement.  All of defendant's
2  obligations are material, a single breach of this agreement is
3  sufficient for the USAO to declare a breach, and defendant shall not
4  be deemed to have cured a breach without the express agreement of the
5  USAO in writing.  If the USAO declares this agreement breached, and
6  the Court finds such a breach to have occurred, then:

7        a.   If defendant has previously entered guilty pleas
8  pursuant to this agreement, defendant will not be able to withdraw
9  the guilty pleas.

10       b.   The USAO will be relieved of all its obligations under
11  this agreement; in particular, the USAO: (i) will no longer be bound
12  by any agreements concerning sentencing and will be free to seek any
13  sentence up to the statutory maximum for the crimes to which
14  defendant has pleaded guilty; and (ii) will no longer be bound by any
15  agreement regarding the use of Cooperation Information and will be
16  free to use any Cooperation Information in any way in any
17  investigation, criminal prosecution, or civil, administrative, or
18  regulatory action.

19       c.   The USAO will be free to criminally prosecute
20  defendant for false statement, obstruction of justice, and perjury
21  based on any knowingly false or misleading statement by defendant.

22       d.   In any investigation, criminal prosecution, or civil,
23  administrative, or regulatory action: (i) defendant will not assert,
24  and hereby waives and gives up, any claim that any Cooperation
25  Information was obtained in violation of the Fifth Amendment
26  privilege against compelled self-incrimination; and (ii) defendant
27  agrees that any Cooperation Information and any Plea Information, as
28  well as any evidence derived from any Cooperation Information or any

1  Plea Information, shall be admissible against defendant, and

2  defendant will not assert, and hereby waives and gives up, any claim

3  under the United States Constitution, any statute, Rule 410 of the

4  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

5  Criminal Procedure, or any other federal rule, that any Cooperation

6  Information, any Plea Information, or any evidence derived from any

7  Cooperation Information or any Plea Information should be suppressed

8  or is inadmissible.

9                    COURT AND PROBATION OFFICE NOT PARTIES

10    30.   Defendant understands that the Court and the United States

11 Probation Office are not parties to this agreement and need not

12 accept any of the USAO's sentencing recommendations or the parties'

13 agreements to facts or sentencing factors.

14    31.   Defendant understands that both defendant and the USAO are

15 free to: (a) supplement the facts by supplying relevant information

16 to the United States Probation Office and the Court, (b) correct any

17 and all factual misstatements relating to the Court's Sentencing

18 Guidelines calculations and determination of sentence, and (c) argue

19 on appeal and collateral review that the Court's Sentencing

20 Guidelines calculations and the sentence it chooses to impose are not

21 error, although each party agrees to maintain its view that the

22 calculations in paragraph 20 are consistent with the facts of this

23 case.  This paragraph permits both the USAO and defendant to submit

24 full and complete factual information to the United States Probation

25 Office and the Court, even if that factual information may be viewed

26 as inconsistent with the Factual Basis or Sentencing Factors agreed

27 to in this agreement.

28

1    32.   Defendant understands that even if the Court ignores any
2    sentencing recommendation, finds facts or reaches conclusions
3    different from those agreed to, and/or imposes any sentence up to the
4    maximum established by statute, defendant cannot, for that reason,
5    withdraw defendant's guilty pleas, and defendant will remain bound to
6    fulfill all defendant's obligations under this agreement.  Defendant
7    understands that no one – not the prosecutor, defendant's attorney,
8    or the Court – can make a binding prediction or promise regarding the
9    sentence defendant will receive, except that it will be within the
10   statutory maximum.

11                    NO ADDITIONAL AGREEMENTS
12   33.   Defendant understands that, except as set forth herein,
13   there are no promises, understandings, or agreements between the USAO
14   and defendant or defendant's attorney, and that no additional
15   promise, understanding, or agreement may be entered into unless in a
16   writing signed by all parties or on the record in court.

17           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING
18   34.   The parties agree that this agreement will be considered
19   //
20   //
21
22
23
24
25
26
27
28

1  part of the record of defendant's guilty plea hearing as if the

2  entire agreement had been read into the record of the proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
5  CALIFORNIA

6  NICOLA T. HANNA
   United States Attorney

7

8                                                    August 21, 2018
                                                     Date
9  RUTH C. PINKEL
   Assistant United States Attorney

10  x                                                7-29-2018
                                                     Date
11  THOMAS SHEPOS
    Defendant

12

13                                                   7-29-18
    JOEL C. KOURY                                    Date
14  Attorney for Defendant
    THOMAS SHEPOS

15

16                        CERTIFICATION OF DEFENDANT

17      I have read this agreement in its entirety.  I have had enough

18  time to review and consider this agreement, and I have carefully and

19  thoroughly discussed every part of it with my attorney.  I understand

20  the terms of this agreement, and I voluntarily agree to those terms.

21  I have discussed the evidence with my attorney, and my attorney has

22  advised me of my rights, of possible pretrial motions that might be

23  filed, of possible defenses that might be asserted either prior to or

24  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

25  of relevant Sentencing Guidelines provisions, and of the consequences

26  of entering into this agreement.  No promises, inducements, or

27  representations of any kind have been made to me other than those

28  contained in this agreement.  No one has threatened or forced me in

                                26

1  any way to enter into this agreement.  I am satisfied with the
2  representation of my attorney in this matter, and I am pleading
3  guilty because I am guilty of the charges and wish to take advantage
4  of the promises set forth in this agreement, and not for any other
5  reason.

6  

7  _____          7·27·2018
   THOMAS SHEPOS                        Date
   Defendant
8
9

10          CERTIFICATION OF DEFENDANT'S ATTORNEY
11
        I am defendant THOMAS SHEPOS's attorney.  I have carefully and
12
   thoroughly discussed every part of this agreement with my client.
13
   Further, I have fully advised my client of his rights, of possible
14
   pretrial motions that might be filed, of possible defenses that might
15
   be asserted either prior to or at trial, of the sentencing factors
16
   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
17
   provisions, and of the consequences of entering into this agreement.
18
   To my knowledge: no promises, inducements, or representations of any
19
   kind have been made to my client other than those contained in this
20
   agreement; no one has threatened or forced my client in any way to
21
   enter into this agreement; my client's decision to enter into this
22
   agreement is an informed and voluntary one; and the factual basis set
23
   forth in this agreement is sufficient to support my client's entry of
24
   guilty pleas pursuant to this agreement.
25

26  _____          7-23-18
   JOEL C. KOURY                        Date
27  Attorney for Defendant
   THOMAS SHEPOS
28

                              27

## CERTIFICATE OF SERVICE

I, Sandy Ear, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on September 5, 2018, I deposited in the United States mail at the United States Courthouse in the above-titled action, in an envelope bearing the requisite postage, a copy of:

**Plea Agreement for defendant Thomas M. Shepos**

service was:

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ By messenger, as follows:

☐ By Federal Express, as follows:

Joel C. Koury
3435 Ocean Park Blvd., Suite 107-50
Santa Monica, CA 90405

at his last known address, at which place there is a delivery service by United States mail.

1    This Certificate is executed on September 5, 2018 , at Los

2  Angeles, California.   I certify under penalty of perjury that the

3  foregoing is true and correct.

4

5

6                                  _____

7                                  SANDY EAR
                                   Legal Assistant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28