E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorney
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4443
    Facsimile: (213) 894-0141
    E-mail:    lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-00569-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION |
| v. | Hearing Date: January 19, 2023 |
| THOMAS J. SHEPOS, | Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. George H. Wu |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Lindsey Greer Dotson, hereby files its sentencing position for defendant THOMAS J. SHEPOS.

///

///

///

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 11, 2023                    Respectfully submitted,

                                                           E. MARTIN ESTRADA
                                                          United States Attorney

                                                          SCOTT M. GARRINGER
                                                          Assistant United States Attorney
                                                          Chief, Criminal Division

                                                          */s/ Lindsey Greer Dotson*
                                                          LINDSEY GREER DOTSON
                                                          Assistant United States Attorney

                                                          Attorneys for Plaintiff
                                                          UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................2

      A.   Background................................................2

      B.   The Arman Gabaee Bribery Scheme...........................2

      C.   The Enrique Contreras Bribery Scheme......................4

      D.   The Kickback Schemes......................................5

      E.   Other Unreported Income...................................6

      F.   False Statements to Federal Agents........................6

      G.   False Statements on Tax Return............................7

      H.   Tax Due and Owing on Unreported Income....................8

III.  ARGUMENT.......................................................8

      A.   Defendant Has Earned a Six-Level Downward Departure
           Pursuant to U.S.S.G. § 5K1.1 for His Substantial
           Assistance................................................8

      B.   With a Six-Level Downward Departure, Defendant Has a
           Guidelines Range of Four to 10 Months' Imprisonment......10

      C.   The Section 3553(a) Factors Warrant a Sentence of
           24 Months' Probation and Restitution of $110,021.........10

IV.   CONCLUSION....................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant pled guilty to a two-count information charging him with False Statements, in violation of 18 U.S.C. § 1001(a)(2), and Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1).[1] As detailed herein, he cooperated early, extensively, and fulsomely in a significant public corruption investigation which, due in large part to defendant, unearthed sizeable corruption schemes in the County of Los Angeles and has resulted in multiple prosecutions and convictions.

Balancing the nature and circumstances of the crimes charged, defendant's history and characteristics, and the need to incentivize significant cooperation like defendant's in order to successfully investigate and root out public corruption, the government requests a sentence of 24 months' probation and an order that he pay $110,021 to the Internal Revenue Service/United States Treasury for unpaid taxes, exclusive of any additional fines or penalties.  A probationary sentence is now particularly appropriate here to avoid unwarranted sentencing disparities in light of the Court's substantial variance given to defendant Arman Gabaee in a related case over the government's objection.  The government's requested sentence here is sufficient, but not greater than necessary, to adequately punish and deter.

---

[1] Defendant was not charged with the bribery or the related offenses listed as relevant conduct in his plea agreement given that such charges would have required use of defendant's protected proffer statements and cooperation information, which the government generally cannot use against a defendant for purposes of charging and sentencing.

**II.   STATEMENT OF FACTS**[2]

    **A.   Background**

From approximately 1998 to 2017, defendant was a public official employed by the County's Real Estate Division.  Defendant's duties involved negotiating leases between private building and property owners and various County departments.  Defendant was also able to request and receive proposals from private real estate developers who wanted to lease their buildings to County departments.  Once a property was identified for a County department in need of space, defendant was able to negotiate lease terms and draft lease agreements for the County and private property owners, or direct others to do so.  Based on defendant's level of seniority, defendant had significant autonomy to contractually bind the Cou]nty.  In particular, defendant had authority to negotiate contract terms on behalf of the County, although final contract approval lay with the Board of Supervisors (the "Board").  However, defendant had authority to approve, with others, change orders on contracts.

    **B.   The Arman Gabaee Bribery Scheme**[3]

Arman Gabaee was a real estate developer who conducted business with the County.  Sometime between 2000 and 2005, Gabaee began to seek improper assistance from defendant in the course of conducting his (Gabaee's) real estate business with the County.  In

---

[2] The Statement of Facts is based on the Factual Basis in defendant's Plea Agreement.  (Dkt. 9, ¶ 18.)

[3] In case no. 18-CR-331-GW, Gabaee was charged with three counts of Honest Services Wire Fraud (18 U.S.C. §§ 1343, 1346) and two counts of Federal Program Bribery (18 U.S.C. § 666).  Just one week prior to trial, Gabaee pled guilty to count four (Federal Program Bribery) for the million-dollar home bribe offer.  With a Total Offense Level of 30 and Criminal History Category I, defendant's Guidelines' range was 97 to 120 months.  This Court sentenced Gabaee to 48 months' imprisonment.  (18-CR-331-GW Dkt. 282.)

approximately 2010 or 2011, Gabaee began giving cash payments to defendant.  Initially, the amounts were $5,000 per month for approximately five to six months.  After that point, to on or about April 11, 2017, Gabaee gave defendant monthly cash payments of approximately $1,000.  The relationship between defendant and Gabaee changed shortly after defendant began accepting these monthly payments in 2010 or 2011.  Specifically, their relationship transformed to an illegal business relationship, wherein defendant would use his County position to provide assistance to Gabaee and financially benefit Gabaee's businesses in return for Gabaee's monthly payments.

The assistance that defendant provided to Gabaee in return for the $1,000 monthly payments included the following: (a) defendant providing non-public County information to Gabaee, including but not limited to, information about the County's leasing needs and competing bids for leases Gabaee desired; (b) defendant giving added attention to, and performing official acts for, Gabaee with regard to Gabaee's existing and potential leases with the County; and (c) defendant resolving issues between Gabaee and various County departments leasing space from Gabaee where issues have arisen within the occupied properties and resolving those issues on terms that were favorable to Gabaee.

For instance, on one occasion in 2011, defendant "ran interference" for Gabaee regarding maintenance issues that had arisen in properties Gabaee was leasing to the County.  The County departments leasing space in the properties owned by Gabaee were upset with maintenance issues, such as broken elevators and roof leaks.  Gabaee relied heavily on defendant to address the issues with

3

the departments by improperly deflecting blame away from Gabaee and onto independent contractors and by allowing Gabaee more time to resolve issues.

In addition, prior to defendant's cooperation (which began on or about December 16, 2016), Gabaee had offered to buy a property in Northern California for defendant as a bribe.  The value of the properties Gabaee sought to purchase as a bribe for defendant exceeded $1,000,000.  In exchange for the Northern California property bribe, Gabaee sought defendant's assistance securing a County lease for Gabaee, whereby the Department of Public Social Services ("DPSS") would lease space in the Hawthorne Mall, which Gabaee owned and was redeveloping.

### C.   The Enrique Contreras Bribery Scheme[4]

In addition to bribes from Gabaee, defendant also accepted bribes from an electrical contractor named Enrique Contreras ("Contreras").  Contreras paid defendant in exchange for defendant disclosing non-public County information and helping Contreras secure County contracts.

---

[4] In case no. 19-CR-257-RGK, Contreras pleaded guilty to a two-count information charging him with Federal Program Bribery (18 U.S.C. § 666) and Subscribing to a False Tax Return (26 U.S.C. § 7206(1)).  After a four-level downward departure for substantial assistance and a four-level variance, Contreras's Guidelines range was 37 to 46 months.  The Honorable R. Gary Klausner, United States District Court Judge, sentenced Contreras to 24 months' imprisonment, three years' supervised released, and ordered him to pay $821,366 in restitution ($600,000 to the County for bribes paid and $221,366 to the United States Treasury for unpaid taxes).  (19-CR-257-RGK Dkt. 40.)

In case no. 19-CR-258-RGK (a case related to the Contreras case), a County employee whom Contreras was bribing, Mohammad Tirmazi, was sentenced to 12 months' imprisonment, three years' supervised release, and ordered to pay $420,010 in restitution ($299,707 to the County for bribes received and $120,303 to the United States Treasury for unpaid taxes).  (19-CR-258-RGK Dkt. 36.)

4

The illicit nature of their relationship began in approximately August 2013 when Contreras offered defendant $25,000 to $40,000 for information that would help Contreras win a bid to perform electrical work on a property leased by the County.  Contreras's work included wiring speakers and installing alarms and security systems.

In exchange for the cash payments, defendant would obtain non-public information from the County's Internal Services Department ("ISD") about whether the County had received bids in response to a County Request for Proposal ("RFP").  The RFP process was the means by which competing contractors submitted bids to the County to perform work on County properties.  Defendant would then disclose that non-public information to Contreras and/or tell Contreras about prior winning bids on similar projects so that Contreras could submit a more competitive bid to the County through the RFP process. Defendant did this to help Contreras obtain the County contract.  In other instances, when either there were no other qualifying bids submitted or time constraints precluded a formal RFP, defendant would contact ISD and use the influence of his County position to help Contreras obtain the County contract.

Contreras always paid defendant in cash two to three times per year, usually in an envelope containing $50 or $100 bills.  From approximately 2013 through December 2016, Contreras gave defendant a total of $250,000 to $300,000 for defendant's assistance with five to seven County contracts ultimately awarded to Contreras.  Defendant did not report these bribe payments on his federal tax returns.

### D.   The Kickback Schemes

On several occasions, defendant arranged to receive improper kickbacks from real estate commissions on properties leased by the

County. Defendant received Form 1099s for theses commissions, which totaled approximately $59,200 for 2012, 2014, and 2016, and reported it as income on his individual tax returns.

In another instance, approximately in 2013, defendant arranged with as associate of Gabaee's to receive, and did receive, a real estate commission kickback of $35,000, through a third party, for the County's lease of a property on Missouri Avenue in West Los Angeles but did not pay income taxes on his receipt of these funds.

### E. Other Unreported Income

Defendant gave some of the cash he received from Contreras to Individual A to store for him (defendant). On one occasion, defendant gave Individual A approximately $150,000 to store. On another occasion, defendant gave Individual A approximately $25,000 to $40,000 to store. Individual A eventually used the funds to cash checks for Contreras and gave defendant $2,500 in interest. Defendant did not report the $2,500 as income.

### F. False Statements to Federal Agents

On or about November 21, 2016, Federal Bureau of Investigation ("FBI") Special Agents interviewed defendant at the United States Attorney's Office in Los Angeles. Defendant knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to the agents, which included the following: (a) defendant denied that he received anything of value from anyone doing business with the County; (b) defendant claimed that a $25,000 cashier's check agents questioned him about represented gambling proceeds that defendant had won in prior years; and (c) defendant claimed that unexplained deposits in his bank accounts were gambling proceeds.

In truth, as detailed above, defendant did receive money and other things of value from individuals doing business with the County. Furthermore, the $25,000 cashier's check actually represented bribe proceeds from Contreras that Individual A had stored for defendant, and defendant did deposit cash bribe payments from Gabaee and others into his bank accounts.

Defendant made the aforementioned false statements to conceal his illegal bribery schemes with Gabaee and others. Defendant's false statements were material, that is, they had a tendency to influence the FBI's investigation and affected the FBI's ability to properly investigate the illegal activity of defendant and others.

**G.   False Statements on Tax Return**

On or about April 14, 2015, in Los Angeles County, defendant willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2014, which defendant verified by a written declaration that it was made under penalty of perjury, and filed such tax return with the Internal Revenue Service ("IRS"), which defendant did not believe to be true and correct as to every material matter in that it failed to report the additional income for 2014 described herein. Specifically, the tax return reported total income of $109,274 and failed to disclose additional income of $139,400.

The false information provided by defendant was material in that it affected the IRS's calculation of the amount of income earned and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on defendant's return. Defendant acted willfully. Defendant knew that the law required him to report all income

7

accurately and to pay all income tax that was due and owing. Defendant voluntarily and intentionally violated that duty.

### H. Tax Due and Owing on Unreported Income

For calendar years 2010 to 2016, defendant failed to report a total of $434,400 of income he received from the bribery and/or kickback payments described above, which consists of the following amounts for the following years: $25,000 (2010); $12,000 (2011); $12,000 (2012); $52,000 (2013); $139,400 (2014); and $102,000 (2015); and $92,000 (2016). Defendant's unreported income for 2014 included approximately $102,000 in bribe payments.

Defendant's underreporting of income resulted in lowering the taxes reported as due and owing on his Form 1040 individual tax returns. As a result of defendant's conduct, defendant owes additional taxes totaling $110,021 consisting of the following amounts for the following tax years: $3,941 (2010); $1,625 (2011); $3,325 (2012); $14,216 (2013); $38,972 (2014); $26,019 (2015); and $21,923 (2016).

## III. ARGUMENT

### A. Defendant Has Earned a Six-Level Downward Departure Pursuant to U.S.S.G. § 5K1.1 for His Substantial Assistance

Pursuant to 18 U.S.C. § 3553(e), the government may move for a downward departure where a defendant has provided substantial assistance in the investigation of another person. In assessing whether to accept the government's recommendation, the Court may consider, among other things, the following factors:

1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

8

      2)    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

      3)    the nature and extent of the defendant's assistance;

      4)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

      5)    the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. In nearly every respect, a significant departure is warranted here.

When approached by federal agents in 2016, defendant made a choice -- one that most defendants, particularly corrupt public officials and their bribe-payors, fail to make. He cooperated. He cooperated early and actively, thereby giving the government an opportunity to gather evidence of crimes as they were happening in real time and in a manner to stop them before completion. Except for his initial interview with law enforcement, he told the truth. He was fulsome in his truth-telling, never minimizing his own culpability and exposing schemes and crimes of which the government was previously unaware. He wore a wire and collected bribes from multiple corrupt actors for five months. He helped the government secure two federal wiretaps in a sprawling corruption investigation. He exposed multiple bribery schemes that would have continued unabated but for defendant. He unmasked corruption in the County that has since led to the convictions and significant sentences of two bribe-payors and another public official. Of note, one of those now-convicted bribe-payors was Arman Gabaee -- a wealthy real estate developer captured on consensual recordings and wire calls offering a million-dollar bribe to defendant to secure a $45 million lease.

In short, despite his admittedly egregious and appalling conduct, defendant has righted the ship to the best of his ability for the past <u>six years</u> since agents first approached him, cooperating at every turn and in every way the government has asked, including most recently by preparing to testify at the Gabaee trial. (Gabaee pled guilty just one week prior to trial.) Defendant has been an integral part of rooting out systemic corruption in the County. The government cannot bring these types of impactful public corruption cases without the cooperation of individuals like defendant. Accordingly, to adequately reflect defendant's fulsome cooperation and incentivize similar cooperation from others, defendant has earned a six-level departure under U.S.S.G. § 5K1.1.

### B. With a Six-Level Downward Departure, Defendant Has a Guidelines Range of Four to 10 Months' Imprisonment

The government concurs with the United States Sentencing Guidelines calculations in the Revised Pretrial Services Report ("PSR"). Defendant has a Total Offense Level of 15 before any departure and falls in Criminal History Category I. (Dkt. 61, p. 4.) With a deserved six-level downward departure for his substantial assistance in exposing and successfully prosecuting multiple corruption schemes, defendant's Total Offense Level is 9, and his new Guidelines range is four to 10 months' imprisonment.

### C. The Section 3553(a) Factors Warrant a Sentence of 24 Months' Probation and Restitution of $110,021

In determining a sufficient sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Courts must also consider the need for any sentence imposed to adequately

10

punish, deter, and reflect the seriousness of the offense. 18 U.S.C. § 3553(a)(2). Any sentence must also protect the public. Id.

Balancing the nature and circumstances of the crimes charged here (False Statements and Subscribing to a False Tax Return), defendant's history and characteristics, and the need to incentivize significant cooperation like defendant's in order to successfully investigate and prosecute public corruption offenses, the government requests a sentence of 24 months' probation and an order requiring defendant to pay $110,021 to the Internal Revenue Service/United States Treasury for unpaid taxes, exclusive of any additional fines or penalties.[5]

With respect to the nature and circumstances of defendant's crimes, his counts of conviction here -- False Statements and Subscribing to a False Tax Return -- are significant. The former undermines the government's ability to investigate crime. The latter fuels systemic underreporting of tax obligations, particularly when not adequately prosecuted and punished. While other felonies may present more immediate and dangerous risks of harm to the public, such as violent crime and narcotics offenses, defendant's crimes are still consequential and deserving of punishment. Furthermore, beyond the counts of conviction, defendant has admitted, as relevant conduct, serious breaches of the public's trust while serving as a

---

[5] The government concurs with Probation that restitution is limited to losses stemming from the counts of conviction (False Statements and Subscribing to a False Tax Return) and thus is limited to the losses to the federal government stemming from defendant's unpaid taxes. United States v. Minter, 146 F. App'x 123, 125 (9th Cir. 2005) (unpublished). In addition, because the PSR concluded that defendant has no ability to pay a fine and the government has no information to the contrary, the government is not requesting a fine at this time.

11

public official.  Although the government has agreed to not offer at sentencing proffer or cooperation information, the Court may consider the information contained in defendant's plea agreement.  It is worth noting, however, that such information was provided of defendant's own volition.  At the time the government approached defendant, the government did not have significant evidence of the crimes detailed in his plea agreement.  It is in large part because of <u>defendant</u> that this corruption, particularly his own, was exposed.

Beyond the nature and circumstances of defendant's conduct, the Court must also consider defendant's history and characteristics.  On the one hand, defendant's gainful employment with the County and high-level position are aggravating.  On the other hand, defendant was, at least in part, driven by financial stress, significant familial discord, and the serious health issues detailed at paragraphs 88 through 89 of the PSR.  These stressors, while in no way defenses to his conduct, are at least somewhat mitigating and place him in a very different category from someone like Gabaee, a wealthy real estate developer with no mental health or substance abuse issues, a stable family life, and who was motivated almost entirely by an insatiable greed.

Furthermore, when fashioning a sentence, the Court must also consider the need to incentivize certain conduct and protect the public.  A probationary sentence for defendant, given his exceedingly unique circumstances, does just that.  As detailed above, defendant is unlike most defendants and certainly unlike Gabaee or Contreras.  When given the opportunity, defendant cooperated early, extensively, fulsomely, and significantly.  Gabaee refused, repeatedly, to cooperate.  Gabaee lied to federal agents.  Even at his own

sentencing, after pleading guilty just one week prior to trial, he continued to minimize his own conduct and demonstrated a fundamental lack of appreciation for the scope and magnitude of his crimes. Contreras, while later contrite, took an entire year to agree to cooperate. And during that year, he obstructed the federal investigation.

In contrast, defendant came to the cooperation table early. Other than his initial interview, he has been genuinely remorseful from the outset. When implicating others, he implicated himself and accepted responsibility. He did not minimize his own culpability. He wore a wire, collected bribe payments for five months, and unmasked massive corruption in multiple schemes that would have continued unabated but for his cooperation. He saved the government innumerable resources by not engaging in the dilatory and frivolous tactics of someone like Gabaee. He has also been free on release for six years without issue. All of these things must be incentivized. The government, particularly when seeking to weed out corruption, cannot do so without cooperators like defendant. Given his law-abiding conduct while free for the past six years, his genuine remorse, and his extensive cooperation, a probationary sentence here is sufficient but not greater than necessary to punish and deter, particularly when his Guidelines sentence is four to 10 months.

Finally, a probationary sentence is now particularly appropriate here to ward against unwarranted sentencing disparities in light of the Court's substantial downward variance given to Gabaee -- a sentence of just 48 months' imprisonment despite a Guidelines range of 97 to 120 months and government recommendation of 108 months. Although they were parties to the same corrupt relationship, for the

reasons previously mentioned, defendant and Gabaee are not similarly-situated.  Their Guidelines ranges are drastically different -- four to 10 months for defendant and 97 to 120 months for Gabaee.  Gabaee's history and characteristics are also more aggravating, as was his obstructive and dilatory conduct after agents alerted him that they were aware of his crimes and his continued minimization up to and including his statements at sentencing.  Gabaee's conduct is everything the government must <u>disincentivize</u>.  Defendant's fulsome acceptance and extensive cooperation, on the other hand, are everything the government must <u>incentivize</u> to prosecute these types of significant public corruption investigations.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 24 months' probation and order him to pay restitution in the amount of $110,021 to the Internal Revenue Service/United States Treasury for unpaid taxes, exclusive of any additional fines or penalties.